IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DAVID STABLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 5:17-cv-00143-MTT |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Defendant Tyson Foods has moved for summary judgment (Doc. 21). For the following reasons, that motion is **GRANTED**.

### I. BACKGROUND[1]

Plaintiff David Stabler, who is white, worked for Defendant Tyson Foods as a maintenance supervisor until August 2016. Doc. 24-1 at 53:19-24; 215:25-217:16. Over the course of his employment, he faced allegations of racism. In July 2012, he was accused of engaging in "racism, unprofessionalism, and favoritism." Docs. 21-3 at 177-182, 185-192; 24-1 at 94:10-21, 96:4-97:19, 112:8-113:9. Tyson investigated the accusations and determined the allegations of racism were unsubstantiated but concluded that Stabler had engaged in favoritism towards one white employee, Bobby Bragg. Docs. 21-3 at 112:8-117:13, 177-182, 185-192; 24-1 at 98:23-99:2. Stabler was again accused of discrimination and favoritism in September 2012; those allegations were also not substantiated. Docs. 21-3 at 183-84; 24-1 at 107:22-112:4. Later, in

---
[1] The facts are undisputed, except where otherwise noted.

November 2012, Stabler received a warning for not treating team members with dignity and respect, specifically that he (1) called an African-American employee "hoss" and (2) forced an African-American employee to pick up a tool Stabler pushed off a desk. Docs. 21-3 at 193; 24-1 at 122:11-124:19, 125:18-128:18. He was issued a warning and understood that further violations of Tyson's code of conduct would lead to additional discipline, including discharge. Doc. 21-3 at 128:14-18. Then, in January 2013, Stabler was again accused of favoritism towards white employees, but the Human Resources investigator, Mary Rushin, ultimately determined the allegations could not be substantiated. Docs. 21-3 at 194-96; 24-1 at 128:19-129:22,135:8-136:22; 24-2 at 40:21-22; 24-3 at 7:23-25. Finally, in February 2015, Tyson again received complaints that Stabler was "very racist towards African-American employees" that were ultimately determined to be unsubstantiated. Docs. 21-3 at 203-06; 24-1 at 140:22-147:1, 147:10-149:11.

Tevin Smith, who is African-American, was one of the team members under Stabler's supervision at Tyson. Docs. 25-6 at 1-3, 6-7; 28-3 ¶ 7. In December 2015, Stabler disciplined Smith for allegedly failing to clock out and improperly accruing overtime. Doc. 25-6 at 6-7, 9-10. However, after an investigation, Tyson exonerated Smith. *Id.*

Smith then came to HR and alleged that Stabler used the slur "n----r" at work. Doc. 24-3 at 22:7-23:23. Rushin did not initially investigate that allegation, as she was working on another investigation at the time. *Id.* at 22:23-23:8, 24:13-28:7, 29:9-13. Smith then called Tyson's complaint hotline and alleged that Stabler walked up to him on June 30, 2016, said "n----r", and then walked away. *Id.* at 32:1-8; Doc. 25-9 at 4.

Based on this complaint, Tyson opened an investigation led by Rushin and Human Resources Manager Michael Wilkerson. Docs. 24-1 at 206:25-207:1; 24-2 at 36:3-6, 40:20-21, 49:13-16, 116:14-18.

Following this investigation, Rushin determined that the allegations were substantiated, and she and Wilkerson informed Stabler's supervisor, Maintenance Manager Chad Bloodworth, of the results of the investigation and told him to suspend Stabler. Docs. 24-2 at 179:3-180:14; 24-4 at 21:15-23:23; 25-9 at 1. Tyson's standard discipline for serious offenses, which this was, was an initial suspension, during which upper management would decide whether to terminate. Docs. 24-3 at 75:9-10, 76:10-13; 24-2 at 141:25-142:6. On August 9, 2016, Stabler met with Bloodworth and Bill Kaisler, an assistant plant manager, who told him he was suspended for three days and directed him to contact Wilkerson after three days. Docs. 24-1 at 59:25-60:1, 202:22-203:15, 205:6-206:2; 24-2 at 179:3-180:14; 24-4 at 15:6-15. Bloodworth understood this to be an initial suspension, with the possibility of further discipline. Doc. 24-4 at 36:19-21.

After three days, Stabler called Wilkerson as directed. Doc. 24-1 at 207:22-24. Wilkerson informed him that based on the investigation, Tyson would terminate Stabler's employment. Doc. 24-1 at 207:22-208:20, 228; 24-2 at 130:2-5. During that call, Stabler informed Wilkerson, for the first time, that he was out of work on medical leave on June 30, 2016, when he was alleged to have used the slur, and that he did not believe Superintendent Larry Moen, his supervisor to whom he was alleged to have been speaking when he used it, had been at work that day, either. Docs. 24-1 at 207:22-209:12, Ex. 19; 24-2 at 44:25-45:16, 52:17-53:5, 130:6-14; 24-3 at 82:13-20.

Wilkerson told Stabler he would check to see whether Stabler had been out of work and that he would get back to Stabler. Doc. 21-3 at 229. Wilkerson then instructed Rushin to conduct a follow-up investigation. Doc. 24-2 at 45:12-14. Despite discrepancies in the witnesses' accounts, discussed in more detail below, Rushin and Wilkerson ultimately concluded that Stabler had used a racial slur. Docs. 24-2 at 177:6-9; 25-9 at 17; 24-3 at 104:24-108:24. On August 17, Wilkerson initiated the approval process, within Tyson's HR system, for Stabler's termination. Doc. 24-2 at 131:22-132:13. Bloodworth approved the termination after being told about the investigation and the outcome. *Id.* at 132:14-133:15. Three other employees, Vincent, Wilson, and Cook, approved the termination, and Stabler was discharged. Doc. 24-2 at 137:15-19.

Stabler filed this lawsuit, claiming he was fired because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Doc. 1 at 8-9. Tyson now moves for summary judgment. Doc. 21.

## II. Summary Judgment Standard

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit. *Id.* at 248. And a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Id.* (citation omitted). Accordingly, "the mere existence of a scintilla of evidence in support

of the position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001) (citation and punctuation marks omitted).

The party moving for summary judgment bears the burden to show that there is no issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may make this showing by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that the non-movant cannot produce admissible evidence to support the issue of material fact. Fed. R. Civ. P. 56(c)(1). If the movant meets this burden, the non-moving party must produce evidence showing that an issue of material fact does exist. *Celotex Corp.*, 477 U.S. at 324. To do so, the non-moving party must "go beyond the pleadings" and identify "specific facts showing a genuine issue for trial." *Id.*; *see also* Fed. R. Civ. P. 56(e)(2)-(3). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255 (citation omitted).

### III. Title VII Claims

#### A. *McDonnell Douglas*

A Title VII plaintiff may prove his case circumstantially when there is no direct evidence of discrimination. The framework for analyzing circumstantial evidence to establish discrimination is found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination, the test for which differs slightly depending on the nature of the

claim. If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence sufficient to raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (quotation marks and citation omitted).

A plaintiff then has the opportunity to show that the employer's stated reason is a pretext for discrimination. This may be done "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1309 (11th Cir. 2012).

1. Prima Facie Case

In the case of an allegation of racially discriminatory discharge, the *McDonnell Douglas* framework generally requires proof of four elements to establish a prima facie case:

> [A] plaintiff makes out a *prima facie* case by showing that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he experienced an adverse employment action, and (4) he was replaced by someone outside of his

protected class or received less favorable treatment than a similarly situated person outside of his protected class.

*Smith v. Mobile Shipbuilding & Repair, Inc.*, 663 F. App'x 793, 799 (11th Cir. 2016); *see also Paye v. Sec'y of Def.*, 157 F. App'x 234, 236 (11th Cir. 2005); *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003).[2]

First, Stabler alleges he was fired because he was white. In the Eleventh Circuit, "[d]iscrimination is discrimination no matter what the race, color, religion, sex, or national origin of the victim . . ." *Bass v. Bd. of Cty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1103 (11th Cir. 2001). Stabler, therefore, has satisfied the "protected class" requirement. Second, although Tyson argues that Stabler was not a satisfactory employee and thus was not qualified for his position, it is clear he met the minimum requirements of his position. He had worked at Tyson for over six years. Doc. 25-2 ¶ 2. Stabler's coworker for seven years, Bloodworth, said he had not had an issue regarding qualifications. Doc. 24-4 at 13:22-23. Stabler also obtained similar employment at another company after his termination. Doc. 21-3 at 32:4-37:3. For the purposes of establishing his prima facie case, Stabler has shown he is qualified. Third, there is no dispute that Stabler was terminated from his employment. And finally, Stabler has adduced evidence that he was replaced by an African-American, someone outside of his race or protected class. Doc. 25-12. Viewing the evidence in the light most

---

[2] Stabler appears to believe that a *McDonnell Douglas* prima facie case always requires a comparator, and so his response brief falls back on the "convincing mosaic" avenue of proving a case with circumstantial evidence. Doc. 25 at 13-14. However, there are different ways of establishing a prima facie case in different situations, and for discriminatory discharge, a plaintiff may use either a comparator or replacement by one outside the protected class. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984). Stabler cites the standard for when the position remains open after discharge. Doc. 25 at 12.

favorable to Stabler, the non-movant, the Court finds he has established a prima facie case.

### 2. Legitimate, Non-Discriminatory Reason

In response to Stabler's prima facie case, Tyson has carried its burden to provide a legitimate, non-discriminatory reason for Stabler's termination. Tyson claims that Stabler was fired because he said "n----r" at work in violation of Tyson's code of conduct. Doc. 24-2 at 161:23-162:2. It is undisputed that using a racial slur at work is a terminable offense for Tyson employees. Doc. 25-2, ¶¶ 8-10. And it is undisputed that Tyson terminated other employees for saying "n----r" at work, including two African-American employees who were terminated by HR supervisor Michael Wilkerson. *Id.* at ¶ 101.

### 3. Whether Tyson's Proffered Reasons Are Unworthy of Credence

The real dispute here is whether Stabler has presented sufficient evidence that Tyson's asserted legitimate, non-discriminatory reason for terminating him is pretextual. Tyson argues he has not because he has failed to show (1) that Tyson's legitimate, non-discriminatory reason was pretext and (2) that the real reason for his dismissal was discrimination. Doc. 21-1 at 17. To rebut the Defendants' asserted legitimate, non-discriminatory reason, however, Stabler only needs to show that it is unworthy of credence.[3]

---

[3] There has been some confusion regarding a plaintiff's burden to prove pretext. In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000), the Supreme Court noted that, while it is true the plaintiff must ultimately prove intentional discrimination, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation" (emphasis in original). In a concurring opinion, Justice Ginsburg, in a summary of the majority's holding, wrote that a plaintiff "*may* survive judgment as a matter of law by submitting two categories of evidence: first, evidence establishing a 'prima facie case,' …; and second, evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was false." *Id.* at 154 (emphasis in original); *see also Dulin v. Bd. of Com'rs of Greenwood Leflore Hosp.,* 657 F.3d 251 (5th Cir. 2011). Clearly, at the

Stabler fails to produce evidence showing Tyson's stated reason for firing him was pretextual. Stabler appears to argue that the conclusion that he had used a racial slur was so unwarranted by the facts as to show that Tyson's management is lying about why they fired him. For his evidence of this, Stabler points to inconsistencies in the record of Tyson's investigation.

First, Stabler's original accuser, Tevin Smith, changed his story. At first, he said Stabler had walked up to him, said "n----r," and then walked away. Doc. 25-9 at 4. According to witnesses, however, Stabler had instead tried to call Smith and then, after not getting a response, said to someone else, "'I can't get these "N" to do anything.'" *Id*. at 6. Later, Smith admitted Stabler had not walked up to him, said that word, and walked away, but he did maintain that he had heard Stabler say it.

Second, the witnesses contradicted both each other and themselves on the details of that day. Tevin Smith had said Stabler used that word on June 30. Doc. 25-9 at 4. Stabler was not at work that day. Smith later said he could not "remember the exact date." Doc. 25-9 at 40. Similarly, two witnesses had said Stabler was talking to Larry Moen when he made the slur on June 30, Doc. 25-9 at 44, 46, but Moen was not at work on June 30. Doc. 24-2 at 147:8. Moen soon after left the company, and Tyson did not interview him during the Stabler investigation. Doc. 24-2 at 54:14-20; 186:23-187:11.

---

summary judgment stage, the plaintiff, in rebutting the employer's proffered legitimate, nondiscriminatory reason, does not shoulder the burden of producing evidence both of falsity and that the real reason was discrimination. Indeed, the *McDonnell Douglas* test is all about proving intentional discrimination by circumstantial evidence; if the employee had direct evidence that the real reason for the adverse employment action was discrimination, the employee would have no need to resort to the *McDonnell Douglas* test.

Additionally, Stabler's response brief makes much of the fact that Willie Hawkins, another witness in Tyson's investigation, had recalled that Stabler allegedly said, "'Dxx I *can* get these 'N' to do anything,'" instead of "can't." (Doc. 25 at 15) (emphasis in original). When interviewed on August 3, 2016, Gulley[4] remembered being upstairs with Willie Hawkins, and he remembered seeing Stabler talking to Moen when Stabler made the comment. Doc. 25-9 at 10. But when questioned later, on August 15, Gulley said he had been upstairs with Thornton and that Hawkins had been downstairs. *Id.* at 42. In his response, Stabler points to additional, similar discrepancies. Doc. 25 at 15-17.

Stabler's argument is essentially that management reached the wrong conclusion when it decided that Stabler had used a racial slur. But "[t]he question to be resolved is not the wisdom or accuracy of" Tyson's conclusion that Stabler used the racial slur, "or whether the decision to fire [him] was prudent or fair." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (quotation marks and citation omitted). Federal courts "do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Id.* at 1266.

Likewise, Stabler's insistence that he did not use that slur, Doc. 24-1 at 174:10-13, contests the wrong issue. On summary judgment, the Court credits Stabler's claim that he never used the word; Tyson, however, did not credit it and did not have to. Despite the discrepancies among witnesses' accounts, the investigator found that "[t]he

---

[4] Spellings of Linwood Gulley's name differ throughout the record. The Court uses "Gulley," as that appears to be how he spells it. Doc. 25-9 at 43.

fact that the N word was used, whether all of the wording is the same or not, it's still the same." Doc. 24-3 at 55:20-21. So even if Stabler has cast some doubt on the details of the witnesses' accounts, he has not introduced any evidence to undermine Tyson's assertion that it terminated him because it believed he had used that racial slur. Stabler has therefore not presented sufficient evidence to demonstrate that Tyson's proffered reason for terminating him is unworthy of credence.

### B. Mosaic of Circumstantial Evidence

Although Stabler fails to successfully navigate the *McDonnell Douglas* framework, the Court recognizes that establishing the *McDonnell Douglas* elements is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff can always survive summary judgment by creating a triable issue concerning the employer's discriminatory intent. The plaintiff does this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. Of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)). However, Stabler has not presented such evidence here.

Stabler's brief focuses on the alleged motives of Michael Wilkerson, who is African-American. *See* Doc. 25 at 1. For example, Stabler contends, with no evidentiary support, that Stabler was not suspended pending a termination decision, but that suspension was the final disciplinary decision and that Wilkerson, on his own, then terminated him. *Id.* at 1-3. As noted, however, Wilkerson asserts he terminated Stabler for using a racial slur. Doc. 24-2 at 161:23-162:2, 177:6-9. Wilkerson testified he had

-11-

no axe to grind with Stabler and did not really know him before becoming involved in the investigation and discipline for Stabler's alleged racial slur. *Id.* at 14-24. Stabler likewise testified he had never met Wilkerson or conversed with him before his phone conversation on August 12, 2016. Doc. 24-1 at 206:12-20. He also admitted he had no evidence Wilkerson was biased against him due to race. *Id.* at 207:17-21. Also, Wilkerson himself did not even have final authority to terminate Stabler—that authority rested with Dale Cook, Wilkerson's supervisor, and it was approved by three other Tyson employees. Doc. 21-2 ¶ 96 (citing Docs. 21-4 at 76; 24-2 at 27:15-25); Doc. 25-2 ¶ 96. Cook and the other three employees are all white. *Id.* Finally, it is undisputed that the usual punishment for using racial slurs was termination (Docs. 24-1 at 88:24-89:6; 24-2 at 71:15-25), as evidenced by Tyson's termination of two African-American employees for using the same slur. Doc. 24-2 at 188:10-14. Stabler's speculation about Wilkerson's bias or motives, therefore, does not help him survive summary judgment.

## IV. Intentional Infliction of Emotional Distress Claim

Under Georgia law, to establish a claim of intentional infliction of emotional distress (IIED), a plaintiff must establish (1) intentional or reckless conduct, (2) that is extreme and outrageous, that (3) caused emotional distress, and (4) the emotional distress was severe. *Ashman v. Marshall's of MA, Inc.*, 244 Ga. App. 228, 229, 535 S.E.2d 265, 267 (2000). Stabler bases his IIED claim on the distress he experienced at work because Tyson recklessly accused him of using a racial slur and recklessly terminated him because of his race. Doc. 25 at 19.

"Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a

question of law." *Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 179, 733 S.E.2d 457, 465 (2012) (quoting *Frank v. Fleet Finance, Inc. of Ga.*, 238 Ga. App. 316, 318, 518 S.E.2d 717, 720 (1999)). "To support a claim of IIED, the conduct at issue must 'go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community' and 'naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress.'" *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1258 (11th Cir. 2016) (quoting *United Parcel Serv. v. Moore*, 238 Ga. App. 376, 519 S.E.2d 15, 17 (1999)).

"Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered a common vicissitude of ordinary life." *Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 857, 678 S.E.2d 555, 560 (2009) (quoting *Jarrard v. United Parcel Serv.*, 242 Ga. App. 58, 59, 529 S.E.2d 144, 146-47 (2000)). "Georgia courts have held that an employer's termination of an employee—however stressful to the employee—generally is not extreme and outrageous conduct." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1229 (11th Cir. 1993) (affirming grant of summary judgment on IIED claim but finding factual issue on age discrimination). In *Southland Propane, Inc. v. McWhorter*, for example, the Georgia Court of Appeals held that false accusations of dishonesty in the workplace, which led to the plaintiff's termination, "did not exceed the bounds usually tolerated by society" and, thus, were "not extreme or outrageous." 312 Ga. App. 812, 819, 770 S.E.2d 270, 277 (2011).

Here, Tyson's decision to fire Stabler for saying "n----r" at work does not, as a matter of law, constitute sufficiently extreme or outrageous conduct to support an IIED claim, regardless of whether they were correct in their decision. *See id.* Accordingly, Tyson is entitled to judgment as a matter of law on Stabler's IIED claim.

**V. CONCLUSION**

For the reasons stated, Tyson's motion for summary judgment (Doc. 21) is **GRANTED**. Accordingly, the Plaintiff's complaint (Doc. 1) is **DISMISSED with prejudice**.

**SO ORDERED**, this 15th day of October, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
